UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CONTEMPO CARD COMPANY, INC., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MYNDSET ALCHEMY, LLC, and ) <br> TIMOTHY MADIGAN, ) <br> Defendant. ) | C.A. No. 24-cv-528-MRD-PAS |

MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

In October 2021, defendant Tim Madigan attended a trade show in Las Vegas in his capacity as an employee of defendant Myndset Alchemy, LLC ("Myndset"). ECF No. 13-2 ¶ 16 (Madigan Decl. Feb. 4, 2025). At the trade show, Madigan met with representatives from Contempo Card Company, Inc. ("Contempo") at Contempo's exhibition booth and received marketing materials. *Id.* In November 2022, Myndset signed a New Customer Application with Contempo. ECF No. 1-1. The application identified Madigan as Myndset's Managing Partner, "CFO/Controller," and primary contact. *Id.* The application included shipping, billing, and payment details as well as a standalone page with the subheading "Personal Guarantee of Account" which Madigan signed as Myndset's "Partner." *Id.* Shortly thereafter, Myndset and Contempo engaged in some business transactions. ECF No. 1-2. A conflict arose between the two companies and, in December 2024, Contempo filed this lawsuit against Myndset and Madigan, alleging the defendants

have outstanding payments due on invoices totaling approximately $145,000 for products ordered and shipped.  ECF No. 1.  Contempo asserts claims against both defendants for breach of contract or, in the alternative, unjust enrichment and "account stated."  ECF No. 1.  Before the Court is Madigan's motion to dismiss the claims against him for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  ECF No. 13.  For the reasons stated below, Madigan's motion is DENIED in its entirety.

## I. PERSONAL JURISDICTION

### A. General Legal Standard

The Court utilizes the prima facie standard to examine the parties' arguments for and against personal jurisdiction.[1]  *See Bluetarp Fin., Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72, 79 & n.6 (1st Cir. 2013).  The Court's inquiry under this standard is whether Contempo (which has the burden of persuasion on this issue) "has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  *Id.* (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)).  "The plaintiff's properly documented evidentiary proffers are accepted as true for purposes of making the prima facie showing, and [the Court] construe[s] these proffers in a light most favorable to plaintiff's jurisdictional claim."  *Id.* (citing *Phillips*, 530 F.3d at 26).  The Court also considers "the facts put forward

---

[1] The parties agree this is the correct method to use to decide Madigan's motion.  *See* ECF No. 13-1 at 6; ECF No. 18 at 17.

by the defendant . . . [t]o the extent that they are uncontradicted." *Id.* (citing *Cossaboon v. Maine Med. Ctr.,* 600 F.3d 25, 31 (1st Cir. 2010)).

When, as here, the Court assesses "personal jurisdiction over a non-resident defendant, a federal court exercising diversity jurisdiction is 'the functional equivalent of a state court sitting in the forum state.'" *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *N. Laminate Sales, Inc. v. Davis,* 403 F.3d 14, 24 (1st Cir. 2005)). To that end, Contempo must show that Rhode Island's long-arm statute, R.I. Gen. Laws 9-5-33(a), provides jurisdiction over Madigan "and that the exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution." *Id.* (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002)). The First Circuit has long recognized that "[t]he Rhode Island long-arm statute is coextensive with the permissible reach of the Due Process Clause." *Id.* (collecting cases). "[T]he due process inquiry . . . 'requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 9 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)).

In the motion to dismiss pending before the Court, the parties focus on specific jurisdiction as opposed to general jurisdiction.[2] Madigan generally argues that he

---

[2] Madigan asserts – and Contempo does not dispute – that there is no basis for general jurisdiction over him. ECF No. 13-1 at 8-10; ECF No. 18 at 18; ECF No. 21 at 2.

3

cannot be subject to specific jurisdiction in Rhode Island because his "involvement" with Contempo "never touched Rhode Island." ECF No. 13-1 at 10.  In the declaration he submitted in support of this motion, he details myriad ways in which he has not had any contact with or within the state of Rhode Island.  ECF No. 13-2.  Madigan asserts that his only communications with Contempo were simply as a Myndset employee, and these interactions always occurred outside Rhode Island.  *Id.*; ECF No. 13-1 at 11.  As for the "Personal Guarantee of Account" he signed as part of the New Customer Application, Madigan dismisses this as being insufficient to place him on the personal jurisdiction hook.  ECF No. 13-1 at 10-11.  The U.S. Supreme Court is clear that, in an evaluation of the exercise of personal jurisdiction, an employee's contacts with the forum state "are not to be judged according to their employer's activities." *Calder v. Jones*, 465 U.S. 783, 790 (1984).  But the high Court is also clear that a defendant's "status as [an] employee[] does not somehow insulate them from jurisdiction." *Id.* (holding exercise of personal jurisdiction over defendants was proper because they were "primary participants in an alleged wrongdoing intentionally directed at" forum state resident).

To resolve the question about whether this Court can assert specific personal jurisdiction over Madigan, the Court must examine three distinct components of the due process inquiry:  relatedness, purposeful availment, and reasonableness.  *Bluetarp Fin., Inc.*, 709 F.3d at 79-80.  Contempo argued each of these three specific jurisdiction components in its opposition to Madigan's motion, and Madigan's reply

4

also addressed each. The discussion to follow is therefore organized around each of these factors.

### B. Discussion

#### 1. Relatedness

"To satisfy the relatedness prong, the cause of action must arise from or relate to the defendant's contacts with the forum state." *Id.* at 80 (citing *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 554 (1st Cir. 2011)). "A consideration in a contract action such as this is whether the defendant's forum-based activity was instrumental in the contract's formation or breach." *Id.* (citing *Adelson v. Hananel,* 510 F.3d 43, 49 (1st Cir. 2007)). According to Contempo, this prong is satisfied because Madigan's contacts with Rhode Island "directly relate[d] to this litigation" as shown by the New Customer Application listing him as the primary contact, his signature on the "Personal Guarantee of Account" page, and Contempo's economic harm resulting from the alleged outstanding balance occurred in Rhode Island. ECF No. 18 at 20-21. Madigan, for his part, replies that any part he played in forming the contract occurred outside Rhode Island because he met Contempo's representative in Nevada at a trade show and communicated with Contempo from either his home in Illinois or his Myndset office in Michigan. ECF No. 21 at 2-3; ECF No. 13-2 ¶ 2.

In Madigan's affidavit he states that he communicated and interacted with Contempo "via email, telephone, [and] videoconference." ECF No. 13-2 ¶ 17. Contempo provides email correspondence between Myndset and Contempo which reflects a back and forth about placing orders and the payment of outstanding

5

balances. ECF No. 18-1. Each of these emails is either to or from Madigan. *Id.* Contempo now alleges a breach of contract resulting from unpaid invoices, a claim that arises out of a contract which includes Madigan's signature as a personal guarantor of the account and Madigan's name as both a Managing Partner and direct contact for Myndset. With all of these details in mind, Court concludes that this cause of action indeed arises from and directly relates to the contact – however narrow – Madigan had with Contempo, a Rhode Island company, on behalf of Myndset. *See Bluetarp Fin., Inc.*, 709 F.3d at 81.

### 2. Purposeful Availment

To satisfy the purposeful availment prong, the plaintiff must show that Madigan's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." *Id.* at 82 (quoting *Hannon v. Beard,* 524 F.3d 275, 284 (1st Cir. 2008)). The "focus [here] is on the defendant's intentions, and the cornerstones are voluntariness and foreseeability." *Id.* (citing *Hannon,* 524 F.3d at 284).

Contempo argues that Madigan's contact with Rhode Island was voluntary and made his presence in Rhode Island's courts foreseeable. ECF No. 18 at 22. Contempo says it relied on the personal guarantee Madigan signed and that the First Circuit has indicated this reliance is dispositive on this prong. *See N. Laminate Sales, Inc.*, 403 F.3d at 25-26 (affirming the District of New Hampshire's conclusion that this State had personal jurisdiction over an individual non-resident defendant for a

6

tortious interference claim because the defendant knew the in-forum company plaintiff would rely on the defendant's statements about the business transaction at issue to plaintiff's detriment). Madigan replies that the personal guarantee is insufficient to show purposeful availment. ECF No. 21 at 9. His reply focuses on the absence of physical presence in Rhode Island and Contempo's failure to provide any details about whether its representatives were in Rhode Island when Madigan interacted with them by email. *Id.* at 7-8. Madigan argues there is no indication he ever initiated contact with any Contempo representative as opposed to just responding to them. *Id.* at 8.

The United States Supreme Court wrote at length about purposeful availment in *Walden v. Fiore*, articulating or repeating several principles that inform this Court's analysis. 571 U.S. 277 (2014). First, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State." *Id.* at 286. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum [s]tate that is the basis for its jurisdiction over him." *Id.* at 285, 288-89 (holding no personal jurisdiction over the defendant in a state where defendant had never traveled, conducted activities within, or had any contact with anyone within the state) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The Court is also clear that a defendant need not have any physical presence in the forum state to be subject to its jurisdiction, *id.* at 283, and that a party's "status as employee[] does not somehow insulate them from jurisdiction," *Calder v. Jones*, 465 U.S. 783, 790

(1984). *Walden* and *Calder*, however, are about intentional tortious conduct, *see* 571 U.S. at 288-89, 465 U.S. at 788-89, and the claims in this case arise from the contractual relationship between the parties. With respect to a claim based in contract rather than allegedly tortious conduct, the Court stated that personal jurisdiction exists when a defendant "'reache[s] out beyond' their [own] State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum state." *Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479-80).

In this case, there is no dispute that Madigan's only contact with Rhode Island was on behalf of his employer, as Myndset's Managing Partner and CFO/Controller. The First Circuit has often focused in on the language from *Walden* indicating that there will be personal jurisdiction over defendants who enter into contracts with a business in the forum state "that envision[s] continuing and wide-reaching contacts in the forum [s]tate." *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 67 (1st Cir. 2014) (holding personal jurisdiction over company who reached into Massachusetts to do business with a Massachusetts company); *see also Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 163 (1st Cir. 2022) (emphasizing the voluntariness and foreseeability factors of purposeful availment when defendant enters into contractual relationship); *LP Sols. LLC v. Duchossois*, 907 F.3d 95, 104 (1st Cir. 2018) (same); *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016) (same). Based on the exhibits the parties submitted in support of their positions on this motion, Madigan's contact with Contempo (and therefore

8

Rhode Island) is as follows. The New Customer Application lists Madigan's name and contact details as Managing Partner and CFO/Controller and contact for Myndset. Madigan signed the "Personal Guaranty of Account" section on the same date as the date provided at the top of the New Customer Application. ECF No. 1-1. The personal guaranty provides: "I hereby agree to pay in full all charges as specified on my invoices per the stated terms. Should the account be placed in the hands of any attorney for collection, the entire balance shall come due and payable immediately with a thirty three percent (33%) attorney fee." *Id*. And the email communications between Myndset and Contempo show that Contempo communicated several times with Madigan, as the primary contact for Myndset, to finalize orders and to discuss the increasingly late payments owed and balance due. *See* ECF No. 18-1.

Considering the principles articulated by the Supreme Court and the First Circuit's application thereof to cases involving contractual relationships and disputes, this Court concludes that Madigan "'reache[ed] out beyond' [his own] State and into another by . . . entering a contractual relationship that 'envisioned continuing and wide-reaching contacts'" in Rhode Island. *Walden*, 571 U.S. at 285 (quoting *Burger King Corp.*, 471 U.S. at 479-80). It is clear that Madigan's starring role in the New Customer Application, especially given his name and signature on the "Personal Guaranty of Account" section and email communications with Contempo over orders and payments, indicates that he, personally, reached into Rhode Island to form the contract and engage in the business relationship with

9

Myndset. Moreover, these documents (especially the emails) show the intended ongoing business relationship with Contempo while Madigan was employed by Myndset. This Court therefore concludes that the voluntary and reasonable foreseeability factors of the purposeful availment test are met. *See Bluetarp Fin., Inc.*, 709 F.3d at 82.

### 3. Reasonableness

To satisfy the reasonableness prong, Contempo must show that "an exercise of jurisdiction [is] reasonable," meaning "consistent with principles of justice and fair play." *Id.* at 83 (citing *Carreras*, 660 F.3d at 554; *Phillips*, 530 F.3d at 27). The factors which guide this determination (often referred to as the gestalt factors) include: "[Madigan's] burden of appearing, [Rhode Island's] interest in adjudicating the dispute, [Contempo's] interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of the matter, and the common interests of all states in promoting substantive social policies." *Id.* (citing *Adelson,* 652 F.3d at 83).

Contempo argues that the exercise of personal jurisdiction over Madigan in this case is reasonable because he signed the "Personal Guaranty of Account" and a balancing of the factors show that adjudicating this case in Rhode Island outweighs the inconvenience to Madigan of appearing in this State. ECF No. 18 at 24. Madigan replies that there is a huge burden to him to appear in court in Rhode Island and that Rhode Island has no clear interest in adjudicating this dispute because Contempo has

failed to show its alleged harm has occurred in Rhode Island. ECF No. 21 at 10-11. Madigan contends that the gestalt factors favor suing him in Illinois. *Id.* at 11.

Contempo's case is against both Myndset and Madigan. Myndset filed an answer and has not challenged this Court's exercise of personal jurisdiction over it. While the Court acknowledges the inconvenience to Madigan, Rhode Island has a strong interest in adjudicating a dispute which affects a business homed within its borders, and there is an undeniable efficiency in Contempo litigating its claims against both defendants in the same forum as filed. *See N. Laminate Sales, Inc.*, 403 F.3d at 26 (concluding the gestalt factors weighed in plaintiff's favor despite the acknowledged burden to the out-of-state defendant of appearing in New Hampshire). The Court therefore concludes that the reasonableness factor is met.

\*\*\*

With all three factors met, the due process inquiry is satisfied and the Court concludes that Madigan has the "minimum contacts with [Rhode Island] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Astro-Med, Inc.*, 591 F.3d at 9 (quoting *Int'l Shoe Co.*, 326 U.S. at 319).

The Court now turns its attention to the Rule 12(b)(6) part of Madigan's motion.

11

## II. FAILURE TO STATE A CLAIM

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must allege a 'plausible entitlement to relief.'" *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Cap. LLC*, 137 F.4th 6, 18 (1st Cir. 2025) (quoting *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To decide whether Contempo has stated a claim against Madigan upon which relief can be granted, the Court assumes all well-pled facts are true, examines those facts in the light most favorable to Contempo's case, and draws all reasonable inferences in Contempo's favor. *See Parmenter v. Prudential Ins. Co. of Am.*, 93 F.4th 13, 18 (1st Cir. 2024). The Court then "decide[s] whether [Contempo] has pled 'factual allegations, either direct or inferential, about each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). The Court may consider "documents incorporated by reference into the complaint." *Id.* (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

### B. Discussion

#### 1. Breach of contract

As a case grounded in diversity jurisdiction, Rhode Island substantive law applies. *See Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 n.9 (1st Cir. 2010). And,

for the purposes of this motion, Madigan concedes that Rhode Island contract law applies to this claim. ECF No. 13-1 at 14 n.3. "To establish a breach of contract under Rhode Island law, 'a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff.'" *Burt v. Bd. of Trs. of Univ. of R.I.*, 84 F.4th 42, 51 (1st Cir. 2023) (quoting *Barkan*, 627 F.3d at 39).

Madigan does not dispute Contempo's allegations that he entered into a contract directly with Contempo, but he insists that the use of the word "my" on the "Personal Guaranty of Account" page ("I hereby agree to pay in full all charges as specified on *my* invoices per the stated terms") unambiguously means that he was only guaranteeing payment for orders he placed personally with Contempo and not payment for orders placed on behalf of Myndset. ECF No. 13-1 at 13-17. Because Madigan has never placed an individual or personal order and Contempo provided only invoices with Myndset as evidence of the outstanding balance Myndset allegedly owes Contempo, Madigan contends that the outstanding balance Contempo seeks to recoup cannot be a breach of this personal guaranty. *Id.* at 15-17.

Contempo rejoins that the New Customer Application is replete with the use of "you" and "your" (for example, "setting up your account" and "notifying your account executive") which aligns properly with the use of "my" on the part of the contract requiring a guarantee of payment by the company's proprietor or partner. ECF No. 18 at 14. Contempo also argues that the personal guarantee is, as a matter of law, "collateral" to the New Customer Application and "binds the guarantor to

13

perform upon the fact of nonperformance of the primary contract." *Id.* (quoting *R.I. Hosp. Trust Nat. Bank v. Ohio Cas. Ins. Co.*, 613 F. Supp. 1197, 1201 (D.R.I. 1985)). Contempo also asserts that the personal guaranty cannot be tied to Madigan's personal relationship with plaintiff's business because Madigan is not an individual customer. *Id.* at 14-15.

After reviewing the sections of the New Customer Application attached to the Complaint, the Court concludes the "Personal Guaranty of Account" is clearly one section of the overall Application and not a standalone document. First, this section, while a standalone page, starts with the header "New Customer Application" in the same font and formatting as the first two pages of the New Customer Application. Second, the page with the "Personal Guaranty of Account" subheader includes a "5" in the bottom right-hand corner (signaling the page number) in the same font and formatting at the "1" and "2" on the two pages of the New Customer Application that precedes it.[3] Third, the signature block requires a "signature of proprietor or partner" and Madigan is identified as a "Managing Partner" on the first page of the New Customer Application. All this to say that the personal guaranty section seems squarely a part of the entire New Customer Application and is not a standalone, Madigan-specific contract. All in all, the allegations in Contempo's complaint, *see* ECF No. 1 ¶¶ 29-35, plausibly plead a breach of contract claim against Madigan, *see Burt*, 84 F.4th at 51.

---

[3] Pages 3 and 4 of the New Customer Application were not included with the exhibit attached to the Complaint. *See* ECF No. 1-1.

14

2. Unjust Enrichment

Madigan argues Contempo's claim against him for unjust enrichment should be dismissed because Contempo has not pled any facts to suggest that the contract between it and Madigan is invalid or voidable. ECF No. 13-1 at 17. Here, he says, unjust enrichment should not be allowed as an alternative cause of action because the count alleges the existence of a contract. *Id.* at 18. Madigan also argues that this claim is substantively not properly pled because the invoices Contempo attached show that any goods or services Contempo provided were to Myndset's benefit, not Madigan's. *Id.* at 18-19. As Contempo points out in its opposition, in Rhode Island courts have long held that unjust enrichment may be pled as an alternative claim in a breach of contract action. ECF No. 18 at 15. *See Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp. 2d 184, 197-98 (D.R.I. 2012). While Contempo can not ultimately recover (if it wins on the merits of any of its counts against Madigan) on both breach of contract and unjust enrichment theories, at this early stage of litigation the Court declines to dismiss this count against Madigan.

3. Account Stated

Madigan argues that Contempo fails to state a plausible claim here for the same reasons why the other claims should be dismissed under Rule 12(b)(6) – namely, Contempo's invoices show that Myndset placed orders, not Madigan individually. ECF No. 13-1 at 19-20. Contempo contends that it plausibly pled the "accounts stated" claim because it has alleged Madigan is financially responsible for the outstanding balance owed by Myndset. ECF No. 18 at 17. Rhode Island law provides

15

that a claim for account stated requires a plaintiff to establish "that the specific amount of the balance due on the account was agreed to by the defendants and that they promised to pay such amount." *Oaklawn Nurseries, Inc., v. Ratush*, 148 A.2d 128, 129 (R.I. 1959). The Complaint Contempo filed plausibly pleads these elements. As with the claim for unjust enrichment, the Court declines to dismiss this count at this early stage of the litigation.

### III.   CONCLUSION

For the reasons stated above, defendant Madigan's Motion to Dismiss (ECF No. 13) is DENIED.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

August 12, 2025